This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                          **NO. 29,675**

**JUAN SAN JUAN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn , District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant appeals from the revocation of his probation. The notice proposed to affirm, and Defendant filed a timely memorandum in opposition pursuant to a granted motion for extension of time. Defendant additionally filed an unopposed motion to supplement the record proper with omitted pages. We grant Defendant's motion to supplement. We remain, however, unpersuaded by Defendant's arguments and therefore affirm.

**Issue 1**

Defendant continues to argue that "dismissal or some other remedy" is merited because the State violated Rule 5-805(F) NMRA when it filed its motion to revoke probation **[RP 190]** almost a year after it received the probation officer's probation violation report. **[DS 2, 5; MIO 6; RP 185, 187, 216]** Defendant refers **[MIO 7]** to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), in support of his position.

As discussed in our notice, Rule 5-805 requires reading Paragraphs E and F in tandem and as only applicable once a defendant has been arrested for the alleged probation violation. To do otherwise would have required the State to commence probation revocation proceedings with Defendant in absentia, thereby depriving Defendant of the opportunity to defend himself. *See generally State v. Rael*, 2008-NMCA-067, ¶ 22, 144 N.M. 170, 184 P.3d 1064 (providing that the Rules of Criminal

2

Procedure are to be interpreted with logic and common sense to avoid absurd results); *State v. Apache*, 104 N.M. 290, 292, 720 P.2d 709, 711 (Ct. App. 1986) (providing that it would be "a violation of constitutional due process[] for a trial court to revoke a probationer's probation, in absentia, when the probationer has absconded from the jurisdiction (emphasis omitted)). We note further that Rule 5-805(G)(5) only contemplates an initial hearing on a motion to revoke probation after the arrest of the defendant on a bench warrant issued for failure to report. Given that the State filed the motion to revoke probation within five days of Defendant's arrest, and given that the hearing on the motion to revoke was thereafter held in a timely manner, we hold that the State complied with Rule 5-805. *See State v. Garcia*, 121 N.M. 544, 547, 915 P.2d 300, 303 (1996) (recognizing that substantial compliance with the rules can be sufficient). We accordingly affirm the district court's denial of Defendant's motion to dismiss.

**Issue 2**

Defendant continues to argue that his due process rights were violated because his probation officer was not sure she had personally participated during each attempt to locate Defendant. **[DS 5, 7; RP 185, 217; MIO 7-9]** Defendant again refers to *Franklin* and *Boyer* in support of his position. **[MIO 9]**

We recognize that due process requires the actual presence and testimony of the

person whose statements form the basis of revocation, unless the State makes an adequate showing and the district court makes a specific finding of "good cause" for not calling such person as a witness. *See State v. Phillips*, 2006-NMCA-001, ¶¶ 12, 14, 16, 138 N.M. 730, 126 P.3d 546 (filed 2005). **[DS 7; MIO 8]** In the present case, while probation officer Cordova apparently did not participate in all of the home visits to locate Defendant **[MIO 4]**, a second officer who did participate testified at trial **[RP 201, 217-18; MIO 4]**, and Defendant effectively stipulated to the substance of a third officer's testimony that was identical to the testimony of the second officer. **[RP 218; MIO 4-5]** For this reason, we conclude that Defendant's due process rights were not violated. To the extent Defendant continues to assert that his Fourteenth Amendment right to confront witnesses was violated **[DS 3; MIO 8]**, we hold that, as discussed above, Defendant was provided the opportunity to confront the witnesses testifying against him.

**Issues 3, 4 and 5**

Defendant continues to challenge the district court's decision to deny him credit for time served on probation from the date the bench warrant was issued for his arrest until the date of his arrest. *See* NMSA 1978, § 31-21-15© (1989) (providing that a probationer is a fugitive from justice if a warrant for his return cannot be served and that upon his return "the court shall determine whether the time from the date of

4

violation to the date of his arrest, or any part of it, shall be counted as time served on probation"). **[DS 6; MIO 10]** The district court's decision to deny probation credit because of a probationer's status as a fugitive from justice is reviewed for substantial evidence. *See State v. Jimenez*, 2004-NMSC-012, ¶ 14, 135 N.M. 442, 90 P.3d 461.

"A defendant is entitled to credit for any time on probation, unless the [s]tate can show either (1) it unsuccessfully attempted to serve the warrant on the defendant or (2) any attempt to serve the defendant would have been futile." *Id.* ¶ 8 (emphasis omitted). In the present case, several attempts were made to locate Defendant, including eight home visits, at least once per month. **[RP 216-18; MIO 3]** In addition, officers questioned family members about Defendant's whereabouts **[RP 216-17; MIO 3, 4]** and also sent a letter to the residence, which was not returned. **[RP 216; MIO 3]** Although Defendant's mother indicated that Defendant may have been living with her other son, she indicated that she did not know where that son lived. **[RP 218; MIO 4]** In light of the foregoing, we conclude that there was substantial evidence to support the district court's decision to treat Defendant as a fugitive from justice within the meaning of Section 31-21-15©. *See Jimenez*, 2004-NMSC-012, ¶ 14 (noting that in determining whether substantial evidence supports a finding of fugitive status, facts are viewed in the light most favorable to the district court's decision).

We recognize that Defendant questions whether the district court erred by considering the State's efforts to locate Defendant before the bench warrant was actually issued. **[MIO 12]** However, the State's efforts to locate Defendant prior to issuance of the bench warrant were directly relevant to assessing the State's actions after the warrant was issued. *See id.* (noting that substantial evidence includes "relevant evidence that a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). Moreover, evidence was presented of efforts the State made to locate Defendant after the warrant was issued. To this end, Defendant's probation officer testified, without specificity, that she continued her efforts to locate Defendant after issuance of the bench warrant. **[MIO 3-4]** And, as for specific instances of efforts to locate Defendant, defense counsel below acknowledged that, after the bench warrant was issued on March 31, 2008 **[RP 191]**, there "was a visit" on October 31, 2008 **[MIO 10; Ct.App.File, yellow clip, Supp.RP/222]**, which the district court could have reasonably inferred to be an effort to locate Defendant. **[MIO 10]** Further, after Defendant's probation officer saw him at a November 20, 2008 funeral, she contacted Defendant's mother and advised Mother to tell Defendant to turn himself in to authorities **[MIO 4, 10; RP 217]**, in another apparent and continued effort to locate Defendant.

Lastly, to the extent Defendant continues to assert that the State waived the

right to argue that he was a fugitive from justice after the date that his probation officer saw him at the funeral **[MIO 10, DS 6]**, we disagree. As noted above, evidence was presented that the probation officer did make an effort to locate Defendant after the funeral. Moreover, although the probation officer may have seen Defendant at the funeral, there is no indication that it would have been possible to apprehend him at that time particularly given the circumstances of the encounter. *See id.* ¶ 15 (noting that to assert that a probationer is a fugitive from justice, the state must show that it attempted to serve the warrant or that it would have been futile to attempt to do so).

Based on the foregoing discussion, we affirm the revocation of Defendant's probation.

**IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**



_____

7

**JONATHAN B. SUTIN, Judge**